IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

JANET LYNN WILLIAMSON )
RIDENHOUR, )
 )
            Plaintiff, )
 )
      v. ) 1:17CV1041
 )
ANDREW SAUL, )
Commissioner of Social Security,[1] )
 )
           Defendant. )

MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Janet Lynn Williamson Ridenhour ("Plaintiff") brought this action pursuant to Section 205(g) of the Social Security Act (the "Act"), as amended (42 U.S.C. § 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security denying her claim for Disability Insurance Benefits ("DIB") under Title II of the Act. The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

I.     PROCEDURAL HISTORY

Plaintiff protectively filed her application for DIB on July 25, 2013, alleging a disability onset date of April 1, 2012. (Tr. at 12, 154-55.)[2] Her claim was denied initially (Tr. at 61-72,

---

[1] Andrew Saul became Commissioner of Social Security on June 17, 2019. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew Saul should be substituted for Nancy A. Berryhill as the Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] Transcript citations refer to the Administrative Record [Doc. #10].

85-92), and that determination was upheld on reconsideration (Tr. at 73-84, 94-97). Thereafter, Plaintiff requested an administrative hearing de novo before an Administrative Law Judge ("ALJ"). (Tr. at 98-99.) Plaintiff attended the subsequent hearing September 29, 2016, along with her attorney and an impartial vocational expert. (Tr. at 12.) The ALJ ultimately concluded that Plaintiff was not disabled within the meaning of the Act (Tr. at 22), and, on September 18, 2017, the Appeals Council denied Plaintiff's request for review of that decision, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review (Tr. at 1-5).

II. <u>LEGAL STANDARD</u>

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." <u>Hines v. Barnhart</u>, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of [the] review of [such an administrative] decision . . . is extremely limited." <u>Frady v. Harris</u>, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." <u>Oppenheim v. Finch</u>, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." <u>Hancock v. Astrue</u>, 667 F.3d 470, 472 (4th Cir. 2012) (internal brackets omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" <u>Hunter v. Sullivan</u>, 993 F.2d 31, 34 (4th Cir. 1993) (quoting <u>Richardson v. Perales</u>, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." <u>Mastro v. Apfel</u>, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is

2

evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472. "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that in administrative proceedings, "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[3]

---

[3] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program . . . provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

3

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first two steps, and establishes at step three that the impairment "equals or exceeds in severity one or more of the impairments listed in Appendix I of the regulations," then "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual function[al] capacity ('RFC')." Id. at 179.[4] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can

---

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that pursuant to the administrative regulations, the "RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be

"perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the Commissioner to prove that a significant number of jobs exist which the claimant could perform, despite [the claimant's] impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

III. DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" since April 1, 2012, her alleged onset date. Plaintiff therefore met her burden at step one of the sequential evaluation process. At step two, the ALJ further determined that Plaintiff suffered from the following severe impairments:

> major depressive disorder, generalized anxiety disorder, and right ear deafness and tinnitus[.]

(Tr. at 14.) The ALJ found at step three that none of these impairments, individually or in combination, met or equaled a disability listing. (Tr. at 14-16.) Therefore, the ALJ assessed Plaintiff's RFC and determined that she could perform medium work but was excluded from

---

determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

work that requires hearing in both ears. He also found that Plaintiff required the following mental restrictions:

> simple, routine, repetitive tasks; unskilled work; low stress, meaning no constant change in routine, no complex decision making, no crisis situations; no production rate work; occasional interaction with the public, supervisors, and coworkers; can stay on task for two hours at a time throughout the workday.

(Tr. at 16.) The ALJ found at step four of the sequential analysis that Plaintiff's past relevant work exceeded her RFC. (Tr. at 20-21.) However, the ALJ further determined at step five that, given Plaintiff's age, education, work experience, RFC, and the testimony of the vocational expert as to these factors, she could perform her other jobs that exist in significant numbers in the national economy. (Tr. at 21-22.) Therefore, the ALJ concluded that Plaintiff was not disabled under the Act. (Tr. at 22.)

Plaintiff now raises three challenges to the ALJ's RFC assessment. First, she asserts that "the ALJ incorrectly evaluated [Plaintiff's] credibility by using a higher standard of proof than required by relevant law." (Pl.'s Br. [Doc. #13] at 5.) Second, Plaintiff argues that "the ALJ erred by failing to assign any specific weight to medical opinions." (Id. at 7.) Third, she contends that the RFC limitation to medium work conflicts with the ALJ's determination at step four of the sequential analysis. (Id. at 14-16.) The Court will address each of Plaintiff's contentions, but will begin with her challenge to the medical opinion evidence.

A.   Medical Opinions

With regard to the opinion evidence, Plaintiff argues that ALJ erred in failing to assign "any specific weight" to the opinions of Plaintiff's treating psychiatrist, Dr. Laura Dunn, and her therapist, Holly Britt-Warren, a licensed clinical social worker. The "treating physician rule," as set out in 20 C.F.R. § 404.1527(c), generally requires an ALJ to give controlling weight

6

to the well-supported opinion of a treating source as to the nature and severity of a claimant's impairment, based on the ability of treating sources to

> provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) [which] may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

20 C.F.R. § 404.1527(c). However, if a treating source's opinion is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with other substantial evidence in the case record," it is not entitled to controlling weight. Social Security Ruling ("SSR") 96-2p, 1996 WL 374188, at *5; 20 C.F.R. § 404.1527(c)(2); see also Craig, 76 F.3d at 590; Mastro, 270 F.3d at 178. Instead, the opinion must be evaluated and weighed using all of the factors provided in 20 C.F.R. § 404.1527(c)(2)(i)-(c)(6), including (1) the length of the treatment relationship, (2) the frequency of examination, (3) the nature and extent of the treatment relationship, (4) the supportability of the opinion, (5) the consistency of the opinion with the record, (6) whether the source is a specialist, and (7) any other factors that may support or contradict the opinion.

Where an ALJ declines to give controlling weight to a treating source opinion, he must "give good reasons in [his] . . . decision for the weight" assigned, taking the above factors into account. 20 C.F.R. § 404.1527(c)(2). "This requires the ALJ to provide sufficient explanation for 'meaningful review' by the courts." Thompson v. Colvin, No. 1:09CV278, 2014 WL 185218, at *5 (M.D.N.C. Jan. 15, 2014) (quotations omitted); see also SSR 96-2p (noting that the decision "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating

source's medical opinion and the reasons for that weight").[5] Such an explanation need not be explicit. "Implicit assignments of weight can support meaningful review" so long as the ALJ's opinion "make[s] clear that [he] 'recognized and evaluated the treating relationships' of medical sources." Thomas v. Comm'r of Soc. Sec., No. Civ. WDQ-10-3070, 2012 WL 670522, at *7 (D. Md. Feb. 27, 2012) (citations omitted).

In the present case, the ALJ acknowledged that both Dr. Dunn and Ms. Britt-Warren provided mental health treatment for Plaintiff for more than a decade.[6] He also acknowledged that, on December 3, 2015, both providers completed one-page, check-box, "Mental Health Medical Source Statements" in which they noted that Plaintiff suffered from significant functional limitations. (Tr. at 18-19, 503-504.) Specifically, Dr. Dunn opined that Plaintiff had the following mental limitations: "extreme difficulties in social functioning and maintaining concentration, persistence, or pace; would be off task twenty-five percent or more of the workday; is incapable of even 'low stress' work, and would be absent more than four days per month." (Tr. at 18) (citing Tr. at 503). Immediately after recounting these opinions, however, the ALJ explained as follows:

> A treating source[']s opinion is given controlling weight if supported by the evidence as a whole; however, this opinion is not consistent with the evidence as a whole, including Dr. Dunn's treatment records. The undersigned notes that [Plaintiff] told Dr. Dunn . . . in May 2013 that she saw no point in finding

---

[5] The Court notes that for claims filed after March 27, 2017, the regulations have been amended and several of the prior Social Security Rulings, including SSR 96-2p, have been rescinded. The new regulations provide that the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. § 404.1520c. However, the claim in the present case was filed before March 27, 2017, and the Court has therefore analyzed Plaintiff's claims pursuant to the treating physician rule set out above.

[6] Because Ms. Britt-Warren is a licensed clinical social worker, she does not meet the regulations' definition of a "treating source" whose opinion could be entitled to controlling weight. Nevertheless, her opinion is "important and should be evaluated on key issues such as impairment severity and functional effects, along with other relevant evidence in the file." SSR 06–03p.

> a job in Richmond since she planned to move. Later, in January 2015, Dr. Dunn noted that [Plaintiff] seemed a little defensive when asked about whether or not she was going to get a job now that her husband is retired. [Tr. at 569.] Dr. Dunn did not indicate that [Plaintiff] could not work. These notations suggest that Dr. Dunn thought [Plaintiff] could work.
>
> Further, Dr. Dunn's treatment records show that [Plaintiff] has situational depression. [Plaintiff] noted in August 2012 that she had one period of depression in three months that lasted only a few days. [Tr. at 468.] Overwhelmingly, Dr. Dunn speaks of [Plaintiff's] "low level of depression," noting that she does not have severe depression. [Tr. at 561, 563, 565, 567, 569, 571.] Dr. Dunn's mental status examinations have routinely been benign. She describes [Plaintiff] as having "a little bit of grief issues" and being "a little dysphoric" and a "little tense[,]" but she has intact memory and concentration. [Tr. at 471, 477, 479, 563, 565, 567, 573.] She only has panic attacks rarely to occasionally. [Tr. at 479, 563.] In July 2015, [Plaintiff] noted that she was satisfied with how things were working. Dr. Dunn noted that there are options to augment medication if necessary, but [Plaintiff] does not seem to require it. [Tr. at 566.] [Plaintiff] had a "dip" in her mood after her father-in-law's death, but records from November 2015 and March 2016 indicate that she was coming back to her low-level depression with only a little dysthymia. [Tr. at 561, 563.] Dr. Dunn's most recent report from May 2016 indicates that [Plaintiff] continues with mostly low-level depression., dysthymia. She has occasional crying spells with a "little dip" in her mood, but she states that she feels better and has improvement in her mood after she is done crying. [Plaintiff] reported improved energy. Interests, motivation, and concentration were "OK." Dr. Dunn noted that [Plaintiff] is more introverted than isolating. [Plaintiff] noted that she had a couple panic attacks but she was not too overwhelmed. [Plaintiff] was cooperative. Her mood showed a little bit of depression. Her affect did not seem as dysthymic. He concentration and memory were intact. She displayed normal speech, thought processes, and psychomotor activity. [Plaintiff] was not in acute distress and showed fait eye contact. [Tr. at 559.] Dr. Dunn noted that [Plaintiff] is doing "pretty well" right now and continued her same medications. [Tr. at 560.]

(Tr. at 18-19.)

Overall, the ALJ's analysis clearly indicates that he discounted Dr. Dunn's opinions to the degree they were not supported by Dr. Dunn's own treatment notes, which generally showed mild to moderate symptoms, and the other evidence of record. In comparison, the ALJ gave "more weight to the State agency psychological consultants' assessments," agreeing,

based on the record as a whole, that Plaintiff "is able to maintain adequate concentration to perform simple, routine, repetitive tasks in a low stress setting" and that she "cannot do production rate work." However, the ALJ also added a limitation "to occasional interaction with the public, supervisors, and coworkers." (Tr. at 20.) This additional restriction is in accordance with the moderate social functioning limitations the ALJ assessed at step three of the sequential analysis. Here again, he noted that, although Plaintiff demonstrated more than the mild difficulties assessed by the State agency consultants, the extreme limitation opined by Dr. Dunn was not consistent with the evidence. (Tr. at 15.)

The ALJ applied a similar rationale in discounting Ms. Britt-Warren's form opinion. Using the same, check-box form completed by Dr. Dunn, Ms. Britt-Warren indicated that Plaintiff had marked restrictions in activities of daily living, marked difficulties in maintaining social functioning, and marked difficulties in maintaining concentration, persistence, or pace. (Tr. at 19, 502.) Ms. Britt-Warren further opined that Plaintiff could perform low stress work, but that her symptoms would interfere with her ability to perform even simple work tasks 20% of the time and that her impairments would cause her to be absent from work about four days per month. (Id.) After recounting these findings, the ALJ determined that "[t]he evidence as a whole does not support this opinion," indicating that the ALJ gave the opinion little, if any, weight. He then explained his rationale for this decision at length:

> As noted above, most of Dr. Dunn's reports are fairly benign. Records from Ms. Britt-Warren show that prior to 2014, [Plaintiff] came for sessions once or twice per week when she was in town from Richmond. The frequency of visits to North Carolina increased after her mother's death. [Tr. at 241-276.] They worked on coping skills and grief. In September 2012, [Plaintiff] saw Ms. Britt-Warren while in town for her mother's funeral and reported depressed mood but no increase in depressive symptoms. [Tr. at 269.] She saw Ms. Britt-Warren multiple times in February 2013 while in North Carolina dealing with her

10

> mother's estate. Over than month, her depression and anxiety steadily improved. [Tr. at 252, 254.] [Plaintiff] mentioned a job possibility in Richmond. [Tr. at 252.] By July 2013, [Plaintiff] showed only slightly depressed affect and mood. Ms. Britt-Warren noted that [Plaintiff's] anxiety and other symptoms appeared to be within normal range given circumstances. [Tr. at 280.]
>
> Once [Plaintiff] returned to North Carolina, her sessions were weekly. After a couple months, her affect was slightly brighter and her mood less depressed. [Tr. at 484.] By summer of 2014, she was doing well with a bright affect. [Tr. at 664.] She went on a trip with her in-laws. [Tr. at 669.] In December 2014, [Plaintiff] had some increased difficulty with grief due to the holidays [Tr. at 670], but she was able to go on a cruise in March 2015 [Tr. at 520] and then a road trip out west in May 2016. [Plaintiff] reported that the Colorado trip went better than she expected and she enjoyed it. Her affect was brighter and her mood was improved. She reported slightly increased ability to engage with others socially and leave the house with less anxiety. [Tr. at 672.] As of September [2016], [Plaintiff's] mood was only slightly depressed. [Tr. at 638.]

(Tr. at 19-20.) Thereafter, the ALJ summarized his reasons for discounting the significant limitations opined by Ms. Britt-Warren as follows:

> Though [Plaintiff's] symptoms have varied in intensity over the years, Ms. Britt-Warren's brief mental status examinations show that [Plaintiff's] affect is either reactive and mood congruent or slightly restricted, mood is euthymic or somewhat/slightly depressed, attitude is calm and cooperative. [Plaintiff] shows no [un]usual movements or psychomotor changes and her thoughts are clear and goal directed.

(Tr. at 20.) Accordingly, as set out above, the ALJ assigned "more weight" to the State agency opinions, which were more consistent with the overall record, although he did include additional RFC restrictions based on Plaintiff's testimony and the treating opinion evidence, including social restrictions. Because the ALJ clearly considered and discussed the factors set out in 20 C.F.R. § 404.1527(c)(2)(i)-(c)(6), including the length of the treatment relationships, the frequency of examinations, the nature and extent of the treatment relationships, the supportability of the opinions, and the consistency of the opinions with the record in implicitly

11

according little weight to both Dr. Dunn and Ms. Britt-Warren's opinions, the Court finds no error.

B. Credibility

Plaintiff next argues that the ALJ failed to apply the correct standard in evaluating her subjective complaints. Under the applicable regulations, the ALJ's decision must "contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." Social Security Ruling 16–3p, Titles II and XVI: Evaluation of Symptoms in Disability Claims, SSR 16–3p, 2017 WL 5180304 (Oct. 25, 2017) ("SSR 16–3p"); see also 20 C.F.R. § 404.1529.[7] In Craig v. Chater, the Fourth Circuit addressed the two-part test for evaluating a claimant's statements about symptoms. Craig, 76 F.3d at 594–95. "First, there must be objective medical evidence showing 'the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged.'" Id. at 594 (citing 20 C.F.R. § 404.1529(b)). If the ALJ determines that such an impairment exists, the second part of the test then requires him to consider all available evidence, including Plaintiff's statements about his pain or other

---

[7] Social Security Ruling 16-3p eliminated use of the term "credibility" in reference to symptom evaluation, effective March 28, 2016. The Social Security Administration has clarified that Social Security Administration adjudicators "will apply this ruling when we make determinations and decisions on or after March 28, 2016" and that "[w]hen a Federal court reviews our final decision in a claim, we expect the court will review the final decision using the rules that were in effect at the time we issued the decision under review." Soc. Sec. Ruling 16-3p, 2017 WL 510304, at *1, 13 n.27 (Oct. 25, 2017). Because the ALJ's decision in this case was issued on December 5, 2016, after March 28, 2016, Social Security Ruling 16-3p applies to it.

symptoms, in order to evaluate "the intensity and persistence of the claimant's [symptoms], and the extent to which [they] affects [her] ability to work." Craig, 76 F.3d at 595.

This approach facilitates the ALJ's ultimate goal, which is to accurately determine the extent to which Plaintiff's symptoms limit her ability to perform basic work activities. Relevant evidence for this inquiry includes Plaintiff's "medical history, medical signs, and laboratory findings" Craig, 76 F.3d at 595, as well as the following factors set out in 20 C.F.R. § 404.1529(c)(3):

(i) [Plaintiff's] daily activities;

(ii) The location, duration, frequency, and intensity of [Plaintiff's] pain or other symptoms;

(iii) Precipitating and aggravating factors;

(iv) The type, dosage, effectiveness, and side effects of any medication [Plaintiff] take[s] or [has] taken to alleviate [her] pain or other symptoms;

(v) Treatment, other than medication, [Plaintiff] receive[s] or [has] received for relief of [her] pain or other symptoms;

(vi) Any measures [Plaintiff] use[s] or [has] used to relieve [her] pain or other symptoms (e.g., lying flat on [her] back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and

(vii) Other factors concerning [Plaintiff's] functional limitations and restrictions due to pain or other symptoms.

Where the ALJ has considered these factors and has heard Plaintiff's testimony and observed her demeanor, the ALJ's determination is entitled to deference. See Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984).

Here, the ALJ determined that Plaintiff's "medically determinable impairments," including depression and anxiety, "could reasonably be expected to produce [her] alleged

symptoms," but that Plaintiff's "statements concerning the intensity, persistence[,] and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (Tr. at 18.) Therefore, Plaintiff's challenge hinges on step two of the Craig analysis. It is undisputed that at step two, the ALJ should not reject a claimant's statements "about the intensity and persistence of [her] pain or other symptoms or about the effect [her] symptoms have on [her] ability to work solely because the available objective medical evidence does not substantiate [her] statements." 20 C.F.R. § 404.1529(c)(2). Thus, "subjective evidence of [symptom] intensity cannot be discounted solely based on objective medical findings." Lewis v. Berryhill, 858 F.3d 858, 866 (4th Cir. 2017). However, it is also undisputed that a plaintiff's "symptoms . . . will be determined to diminish [her] capacity for basic work activities [only] to the extent that [her] alleged functional limitations and restrictions due to symptoms . . . can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(c)(4). Thus, contrary to Plaintiff's argument, objective medical evidence and other evidence in the record are "crucial to evaluating the intensity and persistence of a claimant's pain and the extent to which it impairs [his] ability to work." Hines, 453 F.3d at 565 n.3 (quoting Craig, 76 F.3d at 595). "Although a claimant's allegations about [her symptoms] may not be discredited solely because they are not substantiated by objective evidence of the [symptoms or their] severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the [symptoms] the claimant alleges [she] suffers." Id. (emphasis added); see also SSR 16–3p ("[O]bjective medical

14

evidence is a useful indicator to help make reasonable conclusions about the intensity and persistence of symptoms, including the effects those symptoms may have on the ability to perform work-related activities.").

According to the regulatory guidance:

> If an individual's statements about the intensity, persistence, and limiting effects of symptoms are consistent with the objective medical evidence and the other evidence of record, we will determine that the individual's symptoms are more likely to reduce his or her capacities to perform work-related activities. . . . In contrast, if an individual's statements about the intensity, persistence, and limiting effects of symptoms are inconsistent with the objective medical evidence and the other evidence, we will determine that the individual's symptoms are less likely to reduce his or her capacities to perform work-related activities.

SSR 16–3p.

In the present case, Plaintiff contends that, in finding her symptom complaints less-than-fully credible, the ALJ improperly required "objective proof of subjective complaints plus a record that is 'persuasive of disability.'" (Pl.'s Br. at 7.) Plaintiff further argues that the ALJ mischaracterized the record, and that "[Plaintiff's] treatment notes show she had ups and downs for several years with severe symptoms throughout, and a complete lack of stability despite rigorous therapy." (Pl.'s Br. at 7.)

A review of the decision reveals that the ALJ acknowledged Plaintiff's "longstanding anxiety and depression, which is mostly situational" (Tr. at 18), and noted that her "symptoms have varied in intensity over the years" (Tr. at 20). He also chronicled Plaintiff's long treatment history with both Dr. Dunn and Ms. Britt-Warren, as set out above. (Tr. at 18.) However, in setting out the relevant treatment notes chronologically over a period of several years, the ALJ emphasized that Plaintiff's symptoms were generally described as mild or "low level" with

"dips" in mood due to situational stressors such as the illness and death of Plaintiff's mother. Despite such dips, the ALJ noted the overall improvement in Plaintiff's symptoms over time, as reflected in the records. (See Tr. at 18-20.) The ALJ also noted that the records "do not reference objective findings regarding memory or concentration," and that Dr. Dunn's records "all indicate that [Plaintiff] has intact concentration and memory." (Tr. at 15.) In addition, the ALJ noted Plaintiff's reported reluctance to find a job, her ability to travel fairly extensively, including a cruise, "a road trip out west," and back and forth between Virginia and North Carolina to care for her mother and her mother's estate. (Id.) Plaintiff's previous long-term job ended in 2009 when the company she worked for closed, and she subsequently assisted in her mother's care for several years while attending college. (Tr. at 17.) The ALJ was entitled to consider all of these factors under 20 C.F.R. § 404.1529(c)(3). Moreover, as Plaintiff herself notes, the ALJ gave "more weight" to the findings of the State agency psychological consultants, who found Plaintiff "fully credible," but nevertheless determined that she remained capable of performing work in excess of the RFC ultimately assessed by the ALJ. (Tr. at 20, 66, 68, 79, 81.) Accordingly, substantial evidence supports the ALJ's credibility determination.

C. RFC Conflict

Finally, Plaintiff contends that the ALJ failed to adequately explain why he limited Plaintiff to medium work. In particular, Plaintiff argues that this determination conflicts with the ALJ's later finding that Plaintiff was incapable of returning to her past relevant work, which is classified as light. However, as Defendant correctly points out, the ALJ did not find at step four that Plaintiff was unable to perform her past relevant work as a result of her exertional

16

limitations. In fact, no providers opined that Plaintiff had any exertional limitations, and it appears that the ALJ reduced Plaintiff's RFC to medium work purely to Plaintiff's benefit. Rather, the ALJ found Plaintiff unable to perform her past relevant work because the "mental demands" of the work exceeded her RFC. (Tr. at 21.) As such, the Court finds no basis for remand.

IT IS THEREFORE RECOMMENDED that the Commissioner's decision finding no disability be AFFIRMED, that Plaintiff's Motion for Summary Judgment [Doc. #12] be DENIED, that Defendant's Motion for Judgment on the Pleadings [Doc. #14] be GRANTED, and that this action be DISMISSED with prejudice.

This, the 19th day of August, 2019.

/s/ Joi Elizabeth Peake
United States Magistrate Judge